UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

AZUCENA CASTRO, et al.,

Plaintiff(s),

v.

CRAIG STUART POULTON, et al.,

Defendant(s).

Case No. 2:15-CV-1908 JCM (GWF)

SECOND AMENDED ORDER

Presently before the court is plaintiff Azucena Castro's motion to strike defense expert Jack Broadhurst. (ECF No. 51). Defendants Craig Stuart Poulton and USF Reddaway, Inc. ("USF") responded. (ECF No. 58).

Also before the court is plaintiff's motion *in limine* #1 to preclude defendants from presenting a fraud defense at trial. (ECF No. 59). Defendants responded. (ECF No. 68).

Also before the court is plaintiff's motion *in limine* #2 to exclude defendants from referencing Azucena Castro's family's unrelated accidents. (ECF No. 60). Defendants responded. (ECF No. 69).

Also before the court is plaintiff's motion *in limine* #3 regarding speculation as to credibility. (ECF No. 61). Defendants responded. (ECF No. 70).

Also before the court is plaintiff's motion *in limine* #4 to strike portions of the deposition testimony of Jose Salud Castro and Carolina Tafoya-de-Castro. (ECF No. 62). Defendants responded. (ECF No. 71).

Also before the court is plaintiff's motion *in limine* #5 to allow the court to take judicial notice of a life expectancy table. (ECF No. 63). Defendants responded. (ECF No. 72).

Also before the court is plaintiff's motion to reconsider. (ECF No. 78). Defendants responded (ECF No. 83), to which there has been no reply.

I.  **Facts**

This is a negligence action resulting from a rear-end automobile collision. (ECF No. 1-1). Poulton was operating a tractor-trailer semi-truck owned by USF Reddaway, his employer, on southbound US Highway 95 between Las Vegas and Boulder City. (ECF No. 68 at 3). Two cars slowed down in front of him, causing him to apply his brakes. (ECF No. 59 at 4). Poulton allegedly took his eyes off the road and, when he looked up, the cars in front of him had come to a complete stop. *Id.* Poulton crashed into the back of the vehicle in front of him. *Id.*

The vehicle—a Lincoln LS sedan—was registered to former plaintiff Claudia Castro, who was in the back seat while Azucena Castro drove. (ECF No. 68 at 3). The Lincoln, Poulton, and a white vehicle that had been in front of them all pulled over. *Id.* Jose Silvestre Castro, a former plaintiff in this case, was in the front seat of the Lincoln and on his cell phone when he got out of the vehicle. *Id.* The white vehicle sped off shortly after pulling over. *Id.*

Trooper Sanders and other Nevada Highway Patrol ("NHP") officers responded to the scene. (ECF No. 68 at 4). Sanders, as the lead officer on scene, originally investigated the crash to see if it was staged. (ECF No. 68 at 4). He later cleared the incident because all of the occupants of the Lincoln had the same story. (ECF No. 68 at 4). Poulton received a citation from NHP for "failure to use due caution." (ECF No. 59 at 4).

Plaintiff filed the instant complaint in state court alleging seven causes of action against Poulton: (1) negligence, and (2) negligence *per se;* against USF, (3) *respondeat superior*, (4) negligent entrustment, (5) negligent hiring, (6) negligent training, and (7) negligent supervision. (ECF No. 1-1).

Defendants timely removed the case to federal court. (ECF No. 1). Defendants filed an amended answer thereafter alleging a fraud defense and claiming the accident was staged. (ECF No. 43 at 6).

Plaintiff argues in her motion to strike that defendants' "staged accident" expert, Jack Broadhurst, fails the test for expert testimony described in *Daubert v. Merrell Dow Pharm., Inc.*,

509 U.S. 579, 583 (1993). (ECF No. 51). Plaintiff filed an errata to her motion to strike. (ECF No. 52).

Further, plaintiff filed four motions *in limine* to exclude evidence regarding: a fraud defense at trial, plaintiff's family's prior auto accidents, plaintiff's credibility, and plaintiff's parents' deposition testimonies. (ECF Nos. 59, 60, 61, 62). Plaintiff's fifth motion *in limine* requests the court take judicial notice of a life expectancy table. (ECF No. 63).

Finally, plaintiff moved for reconsideration of the magistrate judge's denial of plaintiff's motion to compel responses to written discovery. (ECF No. 78).

## II. Legal Standard

"The court must decide any preliminary question about whether . . . evidence is admissible." Fed. R. Evid. 104. Motions *in limine* are procedural mechanisms by which the court can make evidentiary rulings in advance of trial, often to preclude the use of unfairly prejudicial evidence. *United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009); *Brodit v. Cambra*, 350 F.3d 985, 1004–05 (9th Cir. 2003).

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1980). Motions *in limine* may be used to exclude or admit evidence in advance of trial. *See* Fed. R. Evid. 103; *United States v. Williams*, 939 F.2d 721, 723 (9th Cir. 1991).

Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of discretion."). "[I]n limine rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that *in limine* rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner).

James C. Mahan
U.S. District Judge

- 3 -

"Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Conboy v. Wynn Las Vegas, LLC*, No. 2:11-cv-1649-JCM-CWH, 2013 WL 1701069, at *1 (D. Nev. Apr. 18, 2013).

**III. Discussion**

*a. Motion to Strike*

Here, Federal Rule of Evidence 702 controls the court's determination whether to strike plaintiff's proposed expert witness, Jack Broadhurst:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see generally Daubert*, 509 U.S. 579.

"*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). This "gatekeeping obligation" requires "that all admitted expert testimony is both relevant and reliable." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017). Expert testimony must be relevant and reliable, and it must "relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz–Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).

Exclusion of expert testimony is proper only when such testimony is irrelevant or unreliable because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

*i. Broadhurst's Qualifications*

Plaintiff argues that Broadhurst is not qualified. (ECF No. 51 at 9–11). Plaintiff contends that Broadhurst, although having been employed as a traffic crash investigator for over twenty-six years, cannot opine as to staged accidents. *Id.* at 4. Specifically, plaintiff points out that Broadhurst investigated only ten accidents he suspected were staged and is unable to say if any were prosecuted. *Id.* As a professional expert witness with Aftermath Systems, his testimony has concerned accident reconstruction and investigation; he has never testified as an expert on staged accidents. *Id.*

Defendants rebut that Broadhurst's testimony—although not scientific—is nonetheless the product of specialized knowledge and experience. (ECF No. 58 at 6–7). Specifically, defendants cite Broadhurst's "law enforcement training and vast experience regarding vehicular crimes." *Id.* at 7.

Broadhurst probably meets the qualifications to be considered an expert in accident reconstruction and investigation, but "in determining whether proposed expert testimony amounts to good science, we may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) ("*Daubert II*").

In the instant action, Broadhurst did not physically examine the vehicles involved in the crash or interview the drivers. (ECF No. 51-3 at 18–19). Instead, Broadhurst's opinion is predicated solely on review of documents—police reports, experts' reports, photographs, collision reports, and insurance documents—given to him by defense counsel. *Id.* at 7. Further, Broadhurst admits he cannot testify to engineering, medical, or scientific opinions. *Id.* at 12–14, 21.

Moreover, there is no evidence that Broadhurst is an expert in staged accidents, having never been called as an expert to opine as to a staged accident before. *Id.* at 21. In fact, Broadhurst himself admits that every encounter he had with an allegedly staged accident went "to long form complaint, and it would have gone to the prosecutor, and quite often we don't ever hear what happens after that." *Id.* at 19–20. Broadhurst did not know if any of those ten allegedly staged accidents were ever prosecuted. *Id.* at 20. Instead, Broadhurst forwarded his opinion, as an expert

in accident reconstruction, along to prosecutors and ostensibly other experts who made the final determination.

Accordingly, Broadhurst's testimony does not appear to constitute "scientific, technical, or other specialized knowledge [that would] help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Ev. 702. Instead, the "facts or data" upon which Broadhurst relies can be adequately interpreted by a jury. Therefore, he is not qualified to testify as an expert on the topic of staged accidents.

### ii. Reliability

Plaintiff also argues that Broadhurst has no reliable methodology. (ECF No. 52 at 14–18). Rather than being the product of reliable principles and methods applying sufficient facts and data to the instant action—as required by Federal Rule of Evidence 702(b), (c), and (d)—plaintiff contends that Broadhurst's expert conclusions are speculative. (ECF No. 52 at 18–19).

Defendants rebut, however, that Broadhurst's opinions are reliable because they are properly based on his "knowledge and experience." (ECF No. 58 at 6).

"[P]ersonal opinion testimony is inadmissible as a matter of law under Rule 702, and speculative testimony is inherently unreliable." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (internal citations omitted). Broadhurst's testimony must "relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz–Brault*, 254 F.3d at 829.

Broadhurst admits that his report contains several errors. (ECF No. 51-3 at 59–60). Broadhurst admits he did not do any investigation into the traffic patterns or reports regarding the area in which the accident occurred. *Id.* Broadhurst does not identify a generally accepted methodology for investigating or opining about staged collisions; rather, he offered only his own ability to draw conclusions and put "pieces of the puzzle" together using evidence. *Id.* at 68–69. Broadhurst himself admits that this "puzzle" methodology is speculation, and that it "appears to [him]" that this accident was staged. *Id.* at 55.

Furthermore, plaintiffs assert that Broadhurst opining as to the credibility of witnesses is unfairly prejudicial. (ECF No. 52 at 20–21). "An expert witness is not permitted to testify

specifically to a witness' credibility or to testify in such a manner as to improperly buttress a witness' credibility." *Cf. United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989) (citing *United States v. Binder,* 769 F.2d 595, 602 (9th Cir. 1985)). Rather, "a jury must decide a witness' credibility." *Id.*

Specifically, plaintiffs object to Broadhurst testifying that, in coming to his conclusions, he gave the defendant driver Poulton's statement more weight than the plaintiff's. (ECF No. 52 at 21). Further, Broadhurst specifically admitted in his deposition that he would tell the jury that Poulton's account of the accident is more credible than that of the plaintiff. (ECF No. 51-3 at 45–46). The court finds that there is an inadequate foundation for Broadhurst to opine as an expert on the reliability of the witnesses in this case.

In summary, this court finds that Broadhurst's opinions are too speculative to be admissible. Further, Broadhurst has not reliably applied a reasonable methodology to the case at hand. In fact, Broadhurst does not have a discernable principle or methodology. Moreover, Broadhurst's opinion does not rely on any specialized knowledge or expertise pertaining to the case at hand. Finally, Broadhurst is unqualified to testify as to the credibility of the witnesses in this case. Accordingly, the motion to strike Broadhurst's expert testimony is granted.

### b. *Motion* In Limine *#1*

Plaintiff moves to preclude defendants from presenting a fraud defense at trial. (ECF No. 59). Plaintiff specifically argues that NHP Officer Sanders's testimony regarding the underlying accident being staged is speculative. *Id.* at 5. Plaintiff also argues that defendant Poulton's testimony regarding the statements responding officers made to him at the scene of the accident are hearsay. *Id.* at 11. Plaintiff further asserts that Poulton's testimony that Jose Castro may have been on the phone with the occupant of the white car is speculation. *Id. at* 9–10. Further, plaintiff contends that the unfair prejudice caused by testimony of a staged accident outweighs its probative value. *Id.*

Finally, plaintiff argues that there is no evidence to support the defense that the plaintiffs staged the accident and that defendants did not properly plead fraud as an affirmative defense. *Id.* at 9–10, 14–15.

As an initial matter, defendants—after receiving leave from the court—filed an amended answer on January 26, 2017, which adequately alleged fraud as an affirmative defense. (ECF No. 43 at 6). Moreover, defendants assert their first answer adequately "encompass[ed] presenting evidence that the accident was staged, and not caused by Mr. Poulton" such that they could present a fraud defense. (ECF No. 68 at 16).

The court agrees that whether there is adequate "evidence [of] whether or not the accident was staged goes to the issue of causation." *Id.* Accordingly, the motion *in limine* will not be granted for initially failing to plead fraud.

The court must now consider whether the evidence in question is inadmissible as hearsay or speculation.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Poulton can testify based on his rational perception that Jose Silvestre Castro exited plaintiff's vehicle while on his cellphone and that the white car drove off shortly thereafter. (ECF No. 59 at 5). Those observations, however, are the extent of Poulton's first-hand perception. Any lay opinion Poulton might offer relying on those observations would be speculative—Poulton lacked personal knowledge of who Jose Silvestre Castro was speaking to on the phone. Fed. R. Evid. 602.

Plaintiff argues that the testimony of Sanders, the responding officer, will amount to improper expert testimony. (ECF No. 59 at 13–14). Plaintiff wants to suppress Sanders's testimony because he noted in his deposition that he initially thought the accident could have been staged. (*Id.* at 6). After he conducted his investigation, however, he concluded that the accident

was not staged. (*Id.* at 6–8). Plaintiff is entitled to cross examine Sanders about his methodology, conclusions, and qualifications at trial. *Daubert*, 509 U.S. at 596. However, the court cannot, at this time, determine whether sufficient foundation will be laid to qualify Sanders as an expert, whether his testimony will need qualification, or whether the evidence will be "shaky but admissible." *Id.*

The comments made by investigating officers may not be inadmissible hearsay—either through Poulton or through Officers Sanders or Kelley—depending on the purpose for which the comments are offered at trial. "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Until the courts hears further evidence at trial, it cannot determine whether the testimony will be offered for the truth of the matter asserted.

In summary, at this time, the court cannot conclude which comments and opinions of the officers are admissible, except that Poulton may not testify about his speculation that Jose Castro was speaking on the phone to an occupant of the white car. Accordingly, the first motion *in limine* is granted in part as to Poulton's speculation that Jose Castro was in contact with the white car, and denied in part as to the comments and opinions of the investigating officers.

### c. *Motion* In Limine *#2*

Plaintiff moves to exclude evidence referencing Azucena Castro's family's unrelated accidents. (ECF No. 60). Plaintiff contends that evidence pertaining to unrelated accidents, injuries, and medical conditions are unfairly prejudicial and irrelevant. (*Id.* at 5–6). Further, plaintiff argues that the traffic accident reports from prior accidents are unfairly prejudicial. *Id.* at 6–7.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Further, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger

- 9 -

of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Here, defendants argue that the evidence of the Castro family's prior accidents is potentially relevant "under Rule 404(b) as evidence of motive, opportunity, plan, intent, knowledge, and absence of mistake or accident." (ECF No. 69 at 6); *see also* Fed. R. Evid. 404(b). The court agrees.

"As we have indicated in prior cases, Rule 404(b) is a 'rule of inclusion ... [; u]nless the evidence of other crimes tends only to prove propensity, it is admissible.'" *Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 947 (9th Cir. 2009) (quoting *United States v. Jackson,* 84 F.3d 1154, 1159 (9th Cir.1996)). While the evidence in this case does not show conformity to character, the details pertaining to several of the seven vehicle accidents over a five year span appear to be relevant and probative to the defense's theory that this accident was staged. (ECF No. 69 at 8).

Defense contends that the seven prior vehicle accidents in which the Castro family was involved prove motive, opportunity, plan, intent, and absence of mistake or accident. *Id.* at 2. For instance, Jose Silvestre Castro—a passenger in the underlying accident—was involved in three accidents, one of which with nearly identical facts to the present case. *Id.* Claudia Castro—the other passenger—was involved in an additional accident. *Id.*

At this time, without hearing further evidence in the context of trial, the evidence of the seven prior accidents appears to be both relevant and probative to defendants' staged-accident defense and admissible to prove motive, opportunity, plan, intent, or absence of mistake or accident.

However, the traffic accident reports regarding the prior vehicle accidents are not, themselves, admissible. The police reports regarding the prior traffic accidents are inadmissible as hearsay. Fed. R. Evid. 801; *see Colvin v. United States*, 479 F.2d 998, 1003 (9th Cir. 1973) ("Hearsay contained in a police report is inadmissible under 28 U.S.C. § 1732."); *cf. Frias v. Valle*, 101 Nev. 219, 221, 698 P.2d 875, 876 (1985).

Therefore, the court grants in part and denies in part the second motion *in limine*. While the court will not exclude testimony regarding the Castro family's prior vehicle accidents, the court

**James C. Mahan**
**U.S. District Judge**

- 10 -

will exclude the traffic accident reports as hearsay. The court can rule again on plaintiff's objections, if any, to the admissibility of this evidence at trial because "*in limine* rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler*, 529 U.S. at 758 n.3.

### d. *Motion* In Limine *#3*

Plaintiff moves to exclude evidence of plaintiff lying about the circumstances of the accident, lying about the accident not being "staged," malingering, lying about her symptoms, magnifying her symptoms, or having secondary gain motivations. (ECF No. 61). Specifically, plaintiff argues that any such evidence or testimony would "invade the province of the jury" and would be speculative. (ECF No. 61 at 5–6). Further, plaintiff contends that any comments by defense attorneys on the matter would be a violation of Nevada Rule of Professional Conduct 3.4(e). (ECF No. 61 at 6–7).

Rule 607 holds that "[a]ny party, including the party that called the witness, may attack the witness's credibility." Fed. R. Evid. 602. Furthermore, Rule 608 allows for "[a] witness's credibility [to] be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness." Fed. R. Evid. 608. Evidence as it pertains to plaintiff's symptoms and medical conditions can be presented and argued during "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . ." *Daubert*, 509 U.S. at 596 (citation omitted).

Plaintiff's credibility can be attacked by admissible evidence. Accordingly, the instant motion *in limine* lacks the context of trial that would establish the basis by which the court would preclude its admission.

Moreover, plaintiff cannot preclude defense attorneys from presenting as a defense the possibility that plaintiff staged the accident because they "may . . . argue reasonable inferences based on the evidence, including that one of the two sides is lying." *United States v. Wilkes*, 662 F.3d 524, 540 (9th Cir. 2011) (internal quotation marks and citation omitted).

As a result, the court will deny plaintiff's third motion *in limine*.

### e. *Motion* In Limine *#4*

Plaintiff moves for the court to strike portions of the deposition testimonies of plaintiff's parents, Jose Salud Castro and Carolina Tafoya-de-Castro. (ECF No. 62). Plaintiff argues that the depositions were attempts to "fish for evidence" of a conspiracy whereby the Castro family collectively staged accidents. *Id.* at 3.

The magistrate judge has already previously ruled that plaintiff did not meet its burden to establish why the defendants' discovery request—the deposition of Jose Salud and Carolina— should be denied. (ECF No. 37 at 2); *see Painters Joint Comm. v. Employee Painters Trust Health & Welfare Fund*, 2011 WL 4573349, at *5 (D. Nev. Sept. 29, 2011). Further, the magistrate judge ruled that the plaintiff may, at trial, object to its admissibility as evidence, but that until that time "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Striking material pursuant to Rule 12(f) is considered a "drastic remedy" that is "generally disfavored." *Nevada Fair Housing Center, Inc. v. Clark Cnty.*, 565 F. Supp. 2d 1178 (D. Nev. 2008). Therefore, courts often require a showing of prejudice by the moving party before granting the requested relief. *Roadhouse v. Las Vegas Metro. Police Dep't*, 290 F.R.D. 535, 543 (D. Nev. 2013).

The court finds no reason to strike the deposition testimony at this time. If the testimony elicited at trial is inadmissible, plaintiffs may object then. Accordingly, plaintiff's motion *in limine* to strike the deposition testimony of Jose Salud Castro and Carolina Tafoya-de-Castro is denied.

### f. *Motion* In Limine #5

Plaintiff's fifth motion *in limine* asks the court to take judicial notice of the plaintiff's life expectancy table. (ECF No. 63). Plaintiff contends that she is "offering the [l]ife [e]xpectancy [t]able . . . for proof of the average individual's life expectancy, not to prove that [p]laintiff will experience medical problems or limitations for the rest of [her] life." *Id.* at 6. Plaintiff argues that the court should take judicial notice of the life expectancy table because "[p]laintiff's life expectancy is 'in issue,' and the contents of the table are 'not subject to reasonable dispute.'" *Id.*

The court may take judicial notice of facts "generally known within the trial court's territorial jurisdiction" or those which "can be accurately and readily determined from sources

James C. Mahan
U.S. District Judge

whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c); *see also, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

The court has not been supplied "with the necessary information." Fed. R. Evid. 201(c). The table in question is merely "a statistical abstract of the United States population" by the United States Census Bureau. (ECF No. 63 at 7). Plaintiff contends that her life expectancy is in issue. (*Id*. at 6). However, both parties admit that the table is not conclusive of plaintiff's health, as it does not consider plaintiff's health in any way, but represents a statistical average of the country. (ECF Nos. 63 at 7; 72 at 2).

Plaintiff, citing *Dallas v. De Yoe*, 200 P. 361 (Cal. Ct. App. 1921), argues "[i]n the absence of evidence to the contrary, it is presumed that the plaintiff was in average health." To the contrary, the record in this case seems to indicate that "Castro is a former smoker, diagnosed with Hepatitis C, and is clinically obese." (ECF No. 72 at 2). The life expectancy table does not have any bearing on this plaintiff's health in particular—which, after all, is the fact "in issue" here—and plaintiff has not offered any expert witness to opine as to her life expectancy or its relationship to the proffered mortality table.

As a result, the court declines to take judicial notice of the life expectancy table because, even if the statistics proffered by the Census Bureau are not reasonably questionable, it is not relevant to this plaintiff's life expectancy. Fed. R. Evid. 401. Thus, its probative value is outweighed by the risk of this table misleading the jury and confusing the issues. Fed R. Evid. 403.

Accordingly, plaintiff's motion *in limine* is denied.

### g. *Motion for Reconsideration*

Finally, plaintiff moves for reconsideration, (ECF No. 78), of the magistrate judge's order, (ECF No. 65), regarding plaintiff's motion to compel responses to written discovery, (ECF No.

45).  On February 23, 2017, plaintiff moved before the magistrate judge for an order compelling the defendants to produce a response to the plaintiff's written discovery.  (ECF No. 45).  Specifically, plaintiff sought admission by the defendants that they had settled with two former plaintiffs to this case, Jose and Claudia Castro.  *Id.*  Defendants responded.  (ECF No. 54).  Plaintiff replied.  (ECF No. 57).  The magistrate judge held a hearing on the motion and denied it.  (ECF No. 65).  Plaintiff asks the court to reconsider the magistrate judge's order, arguing that the magistrate judge's decision is "clearly erroneous and contrary to law."  (ECF No. 78 at 1).

"A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LR IB 1-3, when it has been shown the magistrate judge's order is clearly erroneous or contrary to law."  LR IB 3-1(a).  The district judge may affirm, reverse, or modify, in whole or in part, the magistrate judge's order, as well as remand with instructions.  LR IB 3-1(b).

The court reviews a motion to reconsider a magistrate judge's ruling under the "clearly erroneous or contrary to law" standard set forth in 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a).  "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).  "Although Rule 59(e) permits a district court to reconsider and amend a previous order, the rule offers an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'"  *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (quoting 6 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)).

On a motion to compel, the moving party bears the burden of showing good cause.  Fed. R. Civ. Pro. 26(b)(1).  The scope of discovery is not unlimited.  Rather,

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's claim or defense** and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id.* (emphasis added). Evidence of settlement negotiations is not admissible, on behalf of any party, either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction. Fed. R. Evid. 408. However, such evidence may be admissible for another purpose, "such as proving a witness's bias or prejudice . . . ." Fed. R. Evid. 408(b). Rule 408 "does apply to situations where the party seeking to introduce evidence of a compromise was not involved in the original compromise." *Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213 (9th Cir. 1990) (citing *United States v. Contra Costa County Water District*, 678 F.2d 90, 92 (9th Cir.1982)).

In the instant motion, plaintiff argues that the magistrate judge's order denying the motion to compel was clear error because the evidence of a settlement agreement with prior plaintiffs is relevant to show USF Reddaway, Inc.'s bias against the plaintiff and is thus discoverable pursuant to Rule 408. (ECF No. 78 at 5). Specifically, plaintiff argued in her original motion to compel that she is entitled to evidence of the settlements because "[t]he jury should be allowed to consider the state of mind of the Defendant, USF Reddaway, as to why it is proffering the allegations the subject accident is staged." (ECF No. 45 at 5).

This court agrees that plaintiffs may use evidence of a settlement to show *witness* bias. *See* Fed. R. Evid. 408(b). For example, such evidence may be admissible to show the bias of the former plaintiffs themselves if they were to testify against the remaining plaintiff. However, plaintiff did not identify in her motion to compel any *witness* that will testify against her who these settlements will show as biased—rather, she argued only that the settlements will show that defendant USF's is generally biased against plaintiff to explain USF's decision to invoke a "staged accident" defense.

In reply, plaintiff represented that "Craig Poulton or USF Reddaway" are going to appear as witnesses in the trial of this case, who were parties to the third-party settlement. (ECF No. 57 at 3). However, plaintiff did not explain how evidence of these settlements would show any witness's *bias* as opposed to simply showing the value of plaintiff's case. Plaintiffs explained in reply that the defendant's expert, Jack Broadhurst—who has been stricken—stated that, in his opinion, he would not have paid any money to anyone in this case if he believed the accident was
James C. Mahan
U.S. District Judge

staged; plaintiff explained that with this, and the evidence of the settlement with the other plaintiffs, she sought to prove that defendants do not "truly believe that the accident was staged" and that this instead is "an attorney driven machination." (ECF No. 57 at 4). This is simply impermissible under Rule 408. In other words, plaintiff wants to use evidence that defendants settled with other plaintiffs to show that the defendants do not actually believe their own defense against the remaining plaintiff or otherwise, they would not have settled with anyone, and thus to prove that plaintiff's claim actually has value (and the defendants know it). *See id.* This is exactly what Rule 408 prohibits: evidence of a settlement as proof of the value of a claim.

Indeed, plaintiff admits that she intends to use the settlement evidence to establish that the defendant is biased against her generally because her claim is "significantly more valuable than those of her brother and sister-in-law." (ECF No. 45 at 11). Thus, she impermissibly seeks to use this settlement evidence to "prove or disprove the validity or amount of a disputed claim," in violation of Rule 408.

Therefore, this court is not "left with the definite and firm conviction that a mistake has been committed" by the magistrate judge. *See U.S. Gypsum Co.*, 333 U.S. at 395. Thus, the magistrate judge's order is not clear error and this court must deny reconsideration.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's motion to strike (ECF No. 51) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion *in limine* #1 (ECF No. 59) be, and the same hereby is, GRANTED IN PART and DENIED IN PART, consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiff's motion *in limine* #2 (ECF No. 60) be, and the same hereby is, GRANTED IN PART and DENIED IN PART, consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiff's motion *in limine* #3 (ECF No. 61) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion *in limine* #4 (ECF No. 62) be, and the same hereby is, DENIED.

1     IT IS FURTHER ORDERED that plaintiff's motion *in limine* #5 (ECF No. 63) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for reconsideration (ECF No. 78) be, and the same hereby is, DENIED.

DATED August 29, 2017.

                                                         */s/ James C. Mahan*
                                           UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**